Michael F. McGuinness
PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.C.
2817 Second Avenue North, Suite 300
P.O. Box 1239
Billings, MT  59103
Telephone:  (406) 252-8500
Facsimile:   (406) 294-9500
E-mail: mmcguinness@ppbglaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| YELLOWSTONE RIVER EQUIPMENT, LLC | CAUSE NO. <u>CV-24-121-BLG-TJC</u> |
| Plaintiff, | |
| vs. | |
| NO CREDIT CK, LLC | **PLAINTIFF'S COMPLAINT** |
| Defendant. | |

Plaintiff, Yellowstone River Equipment, LLC, by and through his attorneys of record, and for his Complaint against the Defendant, No Credit Ck, LLC, states and alleges as follows:

## **PARTIES, JURISDICTION AND VENUE**

1.     Yellowstone River Equipment, LLC ("Yellowstone") is a Montana limited liability company with its principal place of business located at 2793 North 26th Road Worden, Yellowstone County, Montana.

2.     Defendant No Credit Ck, LLC ("NCC") is a Mississippi limited liability company with its principal place of business located at 18043 Highway 49, Saucier, Mississippi 39574.

3.     Yellowstone operates a freight service by and through its hub in Yellowstone County, Montana,

4.     NCC buys and sells automobiles including semi-trucks.  NCC actively markets its semi-truck vehicles to Montana citizens.

5.     The matters in controversy, exclusive of interest and costs, exceed the sum of $75,000.00.  There is diversity of citizenship between the Parties.  This Court has personal jurisdiction of the Parties and subject matter jurisdiction.  28 U.S.C. § 1332(a), 1348.

6.     The events giving rise to this action occurred in the State of Montana.  Venue is proper.  28 U.S.C. § 1391(a).

### FACTS COMMON TO ALL COUNTS

7.     Yellowstone restates the allegations contained in paragraphs 1-6 as though fully incorporated herein.

8.     NCC marketed for sale a 2006 Peterbuilt Model 379ExHd Tri Axel semi-truck (the "Vehicle") for sale through an interactive website www.truckpaper.com and the website "Certified Truckers".

9.     Yellowstone inquired about the vehicle through NCC's interactive website.

10.    NCC represented to Yellowstone that the Vehicle's engine had 181,000 miles on a "CAT Platinum Rebuild Engine" along with a rebuilt transmission.

11.    NCC sent Yellowstone a purchase agreement for the purchase of the Vehicle (the "Contract") to Yellowstone's principal, Cameron Jones.

12.    The purchase agreement identified the Vehicle as having 181,000 miles with a CAT Platinum Rebuilt Engine.

13.    Jones executed the purchase agreement and Yellowstone paid NCC the purchase price of $116,349.00.

14.    Yellowstone procured an independent contractor to transport the Vehicle from Mississippi to Montana.

15.    As soon as the Vehicle was brought back to Montana it became inoperable.

16.    Yellowstone hired mechanics to look at the Vehicle and repair its issues in Billings, Montana.

17.    Service technicians in Billings discovered that the Vehicle was not rebuilt with a CAT Platinum Rebuilt Engine.

18.    The Service technicians discovered grey "Stop Leak" in the radiator of the Vehicle and that its sensor wires were intentionally cut and removed from the programming.

19.    The Service technicians discovered that the Vehicle had an engine that is referred to as a "fizz can overhaul," where the seller knows of problems with the vehicle and tries to mask them for the purposes of selling it to an unknowing buyer.

## COUNT ONE-BREACH OF CONTRACT

20.     Yellowstone re-alleges the allegations set forth in paragraphs 1-19 as though fully set forth herein.

21.     Yellowstone and NCC are identifiable parties capable of contracting.

22.     Yellowstone and NCC contracted for a lawful object, the sale of the Vehicle.

23.     Yellowstone and NCC's contract was supported by valuable consideration. NCC was to provide Yellowstone with a semi-truck that had 181,000 miles on a CAT Platinum Overhauled Engine in exchange for payment.

24.     Yellowstone performed its obligations under the contract by making payment in the amount of $116,349.00.

25.     NCC materially breached its contract with Yellowstone by failing to deliver a semi-truck that had 181,000 miles on a CAT Platinum Overhauled Engine.

26.     NCC is liable to Yellowstone for expectancy and consequential damages in an amount to be determined at trial.

## COUNT TWO-ACTUAL FRAUD

27.     Yellowstone re-alleges the allegations set forth in paragraphs 1-26 as though fully set forth herein.

28.     NCC made the material representation to Yellowstone that the Vehicle had 181,000 miles on a CAT Platinum Overhauled Engine.

29.    NCC was aware of the falsity of its representation at the time it was made. The Vehicle did not have a CAT Platinum Overhauled Engine, it was spray painted to look that way, and "Stop Leak" was used to temporarily mask issues with the Vehicle's radiator and the Vehicle's wires were intentionally severed to prevent Yellowstone from discovering issues with the Vehicle's engine

30.    NCC intended Yellowstone to rely upon NCC's representation concerning the Vehicle's engine.

31.    Yellowstone reasonably relied upon NCC's representation of the Vehicle's engine and had a right to rely upon NCC's representations because the photographs depicted a yellow painted engine-indicating a CAT Platinum Overhauled Engine. The Vehicle's engine was spray painted to look and appear to have a CAT Platinum Overhauled Engine, "Stop Leak" was used to temporarily mask issues with the Vehicle's radiator, and the Vehicle's wires were intentionally severed to prevent Yellowstone from discovering issues with the Vehicle's engine.

32.    NCC's representation was material to Yellowstone's decision to purchase the Vehicle, because Yellowstone would not have purchased it at the sales price without assurance that the Vehicle had a CAT Platinum Overhauled Engine.

33.    Yellowstone's reliance upon NCC's false representation caused Yellowstone damages in an amount to be determined at trial.

## COUNT THREE-CONSTRUCTIVE FRAUD

34.    Yellowstone re-alleges the allegations set forth in paragraphs 1-33 of its Complaint as though fully set forth herein.

35.    NCC had a duty to disclose the actual condition of the Vehicle and its engine to Yellowstone.

36.    NCC breached its duty to disclose the actual condition of the Vehicle and its engine to Yellowstone and by taking affirmative steps to misrepresent the same.

37.    NCC's breach allowed it to gain an advantage over Yellowstone by misleading it to its prejudice.

38.    As a result of NCC's conduct, Yellowstone has been damaged in an amount to be determined at trial.

## COUNT FOUR-NEGLIGENT MISREPRESENTATION

39.    Yellowstone re-alleges the allegations set forth in paragraphs 1-38 as though fully set forth herein.

40.    NCC made representations to Yellowstone that the Vehicle had 181,000 miles on a CAT Platinum Overhauled Engine and made material omissions concerning the actual condition of the Vehicle and its engine.

41.    NCC's representations were untrue at the time they were made because the Vehicle did not have a CAT Platinum Overhauled Engine, it was spray painted to look that way, and "Stop Leak" was used to temporarily mask issues with the Vehicle's

radiator and the Vehicle's wires were intentionally severed to prevent Yellowstone from discovering issues with the Vehicle's engine.

42.    NCC's misrepresentations of the Vehicle and its engine were made with the intent to induce Yellowstone into purchasing the Vehicle.

43.    Yellowstone was unaware of the falsity of NCC's misrepresentations at the time they were made and Yellowstone was justified in relying upon NCC's misrepresentations because NCC took affirmative steps to conceal them.

44.    Yellowstone sustained an ascertainable loss of money as a direct result of NCC's misrepresentations.

WHEREFORE, Plaintiffs request entry of judgement against Defendant as follows:

1.    For judgment in favor of the Plaintiff and against the Defendant.

2.    For expectancy, consequential and incidental damages in an amount to be determined at trial;

3.    Plaintiffs' reasonable attorney fees as allowed; and

4.    Such other and further relief as the Court deems just and proper under the circumstances.

DATED this 27th day of August, 2024.

PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC

By: **/s/ Michael F. McGuinness**
Michael F. McGuinness
*Attorney for Plaintiff*