IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| YELLOWSTONE RIVER EQUIPMENT, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>NO CREDIT CK, LLC,<br><br>    Defendant. | CV  24-121-BLG-TJC<br><br><br>**ORDER** |

Plaintiff Yellowstone River Equipment, LLC ("YRE") filed this action against Defendant No Credit Ck, LLC ("NCC"), alleging breach of contract, actual fraud, constructive fraud, and negligent misrepresentation.  (Doc. 1.)

Presently before the Court is NCC's Joint Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), improper venue pursuant to Fed. R. Civ. P. 12(b)(3), and forum non conveniens.  (Doc. 16.)  NCC's motion also includes a motion to compel arbitration in Mississippi.  (*Id.*)  These issues are fully briefed and ripe for the Court's review.  (Docs. 17, 21, 22.)

Having considered the parties' submissions, the Court finds NCC's motion to dismiss for lack of personal jurisdiction should be **GRANTED.**  Accordingly, Defendant's alternative requests to dismiss for improper venue and forum non conveniens, and Defendant's request to compel arbitration in Mississippi, are moot

1

and need not be addressed.

## I.    FACTUAL BACKGROUND

"In ruling on a motion to dismiss for lack of personal jurisdiction, a court may consider declarations, discovery materials, and uncontroverted allegations in the complaint." *Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, 2015 WL 6689572, at *3 (E.D. Cal. Oct. 30, 2015) (citing *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 714 (C.D. Cal. 1996)).  Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

A court's duty is to inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction.  *Id.* Uncontroverted allegations in the complaint must be taken as true.  *Id.*  Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.  *Id.*  Therefore, for purposes of the instant motion, the Court accepts as true the following uncontroverted facts from YRE's Complaint and the affidavit of YRE's managing member, Cameron Jones, (Doc. 21 at 16–19), but will note where facts are disputed by affidavits submitted by NCC (Doc 17-1 at 1–3, Doc. 22-1 at 1–5).

/ / /

YRE is a Montana trucking and equipment company that operates a freight service by and through its hub at its principal place of business in Montana. (Doc. 1 at ¶¶ 1, 3.) NCC is a Mississippi company that buys and sells vehicles from its principal place of business in Mississippi. (*Id.* at ¶¶ 2, 4.)

NCC advertised a semi-truck (the "Vehicle") for sale on two websites. (*Id.* at ¶ 8.) These advertisements stated that the Vehicle had a CAT Platinum Rebuilt Engine. (*Id.* at ¶ 10, Doc. 21 at 17.)

YRE's managing member contacted NCC about purchasing the Vehicle. (Doc. 21 at 17.) YRE contends that it "inquired about the vehicle through NCC's interactive website." (Doc. 1 at ¶ 9.) NCC disputes this, stating that all communications between YRE and NCC regarding the Vehicle were made either by phone, by email, or in-person in Mississippi. (Doc. 22-1 at 4.)

NCC emailed YRE a sales order/bill of sale that referenced the CAT Platinum Rebuilt Engine. (Doc. 1 at ¶¶ 11–12.) YRE sent NCC $116,349.00 to purchase the Vehicle. (*Id.* at ¶ 13, Doc. 21 at 18.) YRE dispatched Todd Woodyard to NCC's office in Mississippi to take possession of the Vehicle and drive it to Montana. (Doc. 1 at ¶ 14, Doc. 21 at 18.)

Woodyard experienced mechanical issues with the Vehicle during his drive. (Doc. 21 at 18.) YRE took the Vehicle to a mechanic in Montana, whereupon service technicians discovered that the Vehicle did not contain a CAT Platinum

Rebuilt Engine.  (Doc. 1 at ¶¶ 16–17.)

YRE brought this action against NCC based on the Court's diversity jurisdiction under 28 U.S.C. § 1332(a).  (*Id.* at ¶ 5.)[1]  Subsequently, NCC filed the present motion to dismiss.

## II.    DISCUSSION

### A.    Personal Jurisdiction

#### 1.    Legal Standard

When a defendant moves to dismiss a claim for lack of personal jurisdiction, the plaintiff bears the burden of proving that jurisdiction is proper.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Courts will "draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility."  *Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012), *overruled on other grounds by Walden v. Fiore*, 571 U.S. 277 (2014).  But "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

---

[1] YRE also alleges jurisdiction in this Court based on 28 U.S.C. § 1348 (Doc. 1 at ¶ 5), which relates to jurisdiction over banking associations.  Neither party to this action is a banking association.  YRE perhaps meant to invoke 18 U.S.C. § 1348, which relates to commodity fraud.  In any case, the Court will ignore the reference to "1348" since YRE sufficiently pled diversity under 28 U.S.C. § 1332(a) to give this Court subject matter jurisdiction.

To exercise personal jurisdiction over a non-resident defendant, a federal court must make the following determinations: (1) whether an applicable state rule or statute confers personal jurisdiction over the defendant; and (2) whether assertion of jurisdiction comports with constitutional principles of due process. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977). With respect to the first inquiry, this Court is bound to look to Montana law. *Haywood v. Travelers Indem. Co. of Am.*, 2006 WL 2860588, at *2 (D. Mont. Oct. 3, 2006).

The Montana Supreme Court has articulated a similar two-part test to determine the existence of personal jurisdiction: (1) the court must ascertain whether personal jurisdiction exists pursuant to Montana Rule of Civil Procedure 4(b)(1), Montana's long-arm statute; and (2) the court must assess whether asserting such jurisdiction is consistent with "traditional notions of fair play and substantial justice embodied in the due process clause." *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003) (citing *Threlkeld v. Colorado*, 16 P.3d 359, 361 (Mont. 2000)).

Montana's long-arm statute provides in relevant part:

> All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
>
>     . . .

5

    (A)    the transaction of any business within Montana;

    (B)    the commission of any act resulting in accrual within Montana of a tort action.

Mont. R. Civ. P. 4(b)(1)(A)–(B).

The first sentence of Rule 4(b)(1) establishes the requirements for general jurisdiction. *Cimmaron*, 67 P.3d at 260 (citing *Bi-Lo Foods, Inc. v. Alpine Bank, Clifton*, 955 P.2d 154, 157 (Mont. 1998)). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (emphasis in original). The remainder of Rule 4(b)(1) establishes the requirements for specific jurisdiction. *Cimmaron*, 67 P.3d at 260. In contrast to general jurisdiction, specific jurisdiction is more limited, and requires the controversy be directly related to the defendant's contacts with the forum. *Bristol-Myers*, 582 U.S. at 262.

If the Court finds it may exercise specific jurisdiction under Mont. R. Civ. P. 4(b)(1), it must next determine whether such exercise is commensurate with the defendant's due process rights under federal law. *Bedrejo v. Triple E Can., Ltd.*, 984 P.2d 739, 742 (Mont. 1999) (citing *Simmons v. Montana*, 670 P.2d 1372, 1376–77 (Mont. 1983); *Grizzly Sec. Armored Express, Inc. v. Armored Grp., LLC*, 255 P.3d 143, 149 (Mont. 2011)).

/ / /

The Ninth Circuit has developed the following three-part due process test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff shows the first two prongs are met, the burden then shifts to the defendant to demonstrate that the exercise of jurisdiction would be unreasonable. *Id.* An insufficient showing at any prong, requires dismissal. *Id.*

### 2.    General Jurisdiction

NCC asserts that there is no basis for exercising general jurisdiction over it because the company "does not have a continuous or systematic presence" in Montana. (Doc. 17 at 11.) NCC points out that it is a Mississippi company with its principal place of business in Mississippi. (*Id.* at 3–4.) NCC does not have employees, registered agents, or operations in Montana, nor is it authorized to do

business in Montana.  (*Id.* at 11.)  YRE does not dispute that there is no basis for asserting general jurisdiction over NCC.  (*See* Doc. 21 at 2.)  Accordingly, the Court may not exercise general jurisdiction over NCC.

### 3.    Specific Jurisdiction

NCC also argues that it has not taken any action that would subject it to specific jurisdiction under Mont. R. Civ. P. 4(b)(1).  (Doc. 17 at 9.)  NCC maintains that it has no ties to Montana, and that forcing it to defend this action in Montana would "offend traditional notions of fair play and substantial justice." (*Id.* at 1.)  YRE counters that the Court may properly exercise specific jurisdiction over NCC because "NCC transacted business within Montana and the accrual of tort actions against NCC were discovered in Montana."  (Doc. 21 at 3.)

### a.    Montana's Long-Arm Statute

YRE points to two sections of Montana's long-arm statute: Mont. R. Civ. P. 4(b)(1)(A) ("the transaction of any business within Montana") and 4(b)(1)(B) ("the commission of any act resulting in accrual within Montana of a tort action").  (*Id.* at 2.)  Even accepting YRE's allegations as true, however, the Court finds that YRE failed to allege facts sufficient to find that NCC committed actions that would bring it within the reach of the statute.

/ / /

/ / /

###### i.    Transaction of Any Business Within Montana

Rule 4(b)(1)(A) requires "far fewer contacts with the forum state than are necessary to support general jurisdiction on the theory that the defendant is 'doing business' in the forum state." *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 18 (Mont. 2015) (quoting 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, Civil 3d § 1069.2 (2002)).  Nevertheless, the Montana Supreme Court has stated that there still must be "substantial interactions occur[ring] in Montana." *Id.* at 19.  For example, merely entering a contract with a Montana resident does not subject a non-resident to jurisdiction.  *Cimmaron*, 67 P.3d at 260–61.  "Even extensive interstate communications . . . do not give rise to jurisdiction where the contract is to be performed in another state." *Milky Whey*, 342 P.3d at 19.  This is because "interstate communication is an almost inevitable accompaniment to doing business in the modern world, and cannot by itself be considered 'contact' for justifying the exercise of personal jurisdiction." *Cimmaron*, 67 P.3d at 261 (citing *Edsall Constr. Co. Inc. v. Robinson*, 804 P.2d 1039, 1042 (Mont. 1991)).

Further, it is well established that "a defendant must be haled into court in a forum state 'based on his own affiliation with' the state, not based on the unilateral activity of a plaintiff or on the random fortuitous, or attenuated contacts the defendant has with other persons affiliated with the state." *Tackett v. Duncan*, 334

P.3d 920, 928–29 (Mont. 2014) (quoting *Walden*, 571 U.S. at 286).

To determine whether a defendant has transacted business within Montana under Mont. R. Civ. P. 4(b)(1)(A), courts generally consider a number of factors, "such as the defendant company's local negotiations for various types of commercial transactions, the solicitation of business within the state, prior litigations in the forum, the presence of agents in the state, and the existence of ongoing contractual relationships with residents of the forum state." *Milky Whey*, 342 P.3d at 18 (quoting 4A Wright & Miller, § 1069.3, 156–61).

Applying these factors here, there is scant evidence to support a finding that this action arises from NCC's transaction of business in Montana. There were no local negotiations for the transaction, and no evidence that NCC has been involved in prior litigation in the state, had any agents in the state, or had any ongoing contractual relationships with residents in Montana. Nevertheless, YRE argues that specific jurisdiction can be found based on NCC's solicitation of business in the state through its "interactive website."

The Montana Supreme Court has not directly addressed when the maintenance of a website may be considered the transaction of business within the state. But several cases in the Ninth Circuit have considered what type and what amount of internet presence is sufficient to allow the exercise of specific personal

jurisdiction under a due process analysis.[2]  *See generally Briskin v. Shopify, Inc.*, 135 F.4th 739, 752–55 (collecting Ninth Circuit cases regarding "Specific Personal Jurisdiction in the Internet Age").  In general, courts look to the interactivity of a website to help assess its jurisdictional effect, if any.  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997).  "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  *Id.* (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

Courts have also evaluated the jurisdictional effects of out-of-state internet activity where the defendant neither owns nor operates the underlying website.  For instance, in *Boschetto*, the Ninth Circuit considered whether a Wisconsin defendant who advertised and sold a vehicle on eBay to a buyer in California could be haled into court in California on that basis.  As here, the buyer alleged that the defendant fraudulently misrepresented the state of the vehicle, and that the buyer did not discover the vehicle's defects until they inspected the vehicle in their home state.  The court found that the Wisconsin defendant had insufficient contacts with California to justify specific jurisdiction, reiterating that "merely advertising over

---

[2] These cases arose in jurisdictions where the state's long-arm statute provides for personal jurisdiction co-extensive with the limits of federal due process; and thus, the jurisdictional analyses under state law and federal due process are the same.

the Internet is not sufficient to confer jurisdiction throughout the United States, even though the advertisement or website at issue may be viewed nationwide." *Boschetto*, 539 F.3d at 1022–23 (Rymer, J., concurring) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1157–58 (9th Cir. 2006); *Cybersell*, 130 F.3d at 419–20).

A defendant is required to do "something more" to expressly aim their internet activity at a particular state or a particular resident within a state for that internet activity to justify the exercise of personal jurisdiction. *Id.* at 1022 (citing *Cybersell*, 130 F.3d at 418–19; *Pebble Beach*, 453 F.3d at 1156–57); *see also id.* at n.3 (collecting and summarizing on-point Ninth Circuit cases); *see also, e.g., Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) (express aiming found where defendant, in regular course of business, sold a product through a website and caused it to be delivered to the forum state).

YRE's allegations regarding NCC's internet activities are somewhat unclear. YRE alleges that NCC marketed the Vehicle "through an interactive website www.truckpaper.com and the website 'Certified Truckers.'" (Doc. 1 at ¶ 8.) YRE then states that it "inquired about the vehicle through NCC's interactive website," (*Id.* at ¶ 9) without specifying to which website this refers or the nature and extent of the communications. Aside from this vague assertion, YRE does not directly allege that NCC owns either of the websites on which it advertised the Vehicle. Instead, the Jones affidavit, after discussing the advertisements on truckpaper.com

and certifiedtruckers.com, states that "NCC also maintains its own website," identified as nocreditck.com.  (Doc. 21 at 17.)  In this context, the implication seems to be that NCC does not own or operate truckpaper.com or Certified Truckers, the websites where the Vehicle was advertised.

Although YRE makes much of the fact that NCC advertised on interactive websites, YRE does not actually allege that it used any of these interactive features to purchase the Vehicle.  Instead, YRE only alleges that it inquired about the Vehicle through a website.[3]  Whatever the level of interactivity of the websites, YRE does not allege that NCC actually used them to transact business beyond mere advertising.  Instead, YRE references nocreditck.com, where NCC "allows a customer to purchase its products online."  (*Id.* at 17.)  But YRE fails to allege that this website is in any way connected to the sale of the Vehicle or that YRE ever used this website and its interactive features.  Nor does YRE allege that NCC regularly engages in commerce with Montana residents through this website.

YRE also alleges that NCC "actively markets its semi-truck vehicles to Montana citizens."  (Doc. 1 at ¶ 4.)  But YRE does not support this conclusory statement with any facts indicating that NCC does something more than post advertisements on websites that are accessible worldwide.  Aside from this "bare

---

[3] In the affidavit of YRE's Managing Member, Cameron Jones, it is stated that YRE contacted NCC regarding the purchase of the Vehicle, without reference to contacting NCC through a website.  (Doc. 21 at 17.)

bones" assertion, YRE does not allege that NCC specifically targets Montana or Montana residents through its internet activities or otherwise.

Generously construing YRE's Complaint, YRE alleges that NCC has transacted business within Montana by publishing advertisements of the Vehicle on interactive websites and by making communications by phone and email relating to the Vehicle. YRE does not allege that NCC has done something more in connection with its online advertisements and communications such that these contacts could be considered a basis for specific jurisdiction. Accordingly, the Court finds that YRE has not made a prima facie showing that NCC's activities fall under Mont. R. Civ. P. 4(b)(1)(A).

### ii.    Commission of Any Act Resulting in Accrual Within Montana of a Tort Action

The other basis YRE argues for bringing NCC within reach of Montana's long-arm statute is the commission of an act resulting in the accrual of a tort within Montana. YRE alleges NCC committed three torts: actual fraud, constructive fraud, and negligent misrepresentation.

In Montana, a party alleging actual fraud must establish the following nine elements: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance upon its truth; (8)

14

the hearer's right to rely upon it; and (9) the hearer's consequent and proximate injury or damage." *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 198 P.3d 796, 801 (Mont. 2008). Constructive fraud requires essentially the same elements, minus the fifth element requiring intent to deceive. *Id*. Likewise, the tort of negligent misrepresentation requires similar proof, except it is sufficient to show the untrue representation was made without "any reasonable ground for believing it to be true." *See Shelton v. Dep't of Pub. Health and Hum. Servs.*, 567 P.3d 285, 296 (Mont. 2025) (listing elements of negligent misrepresentation).

YRE makes sufficient allegations in its Complaint that, if true, would establish that NCC committed actual fraud, and therefore, constructive fraud and negligent misrepresentation as well. Essentially, YRE alleges that NCC falsely represented that the Vehicle had a CAT Platinum Rebuilt Engine and YRE relied on this representation in purchasing the Vehicle. But even where a tortious act has occurred, the determination of "whether a tort accrued in Montana is highly-fact specific and dependent on the nature of the alleged tort at issue." *Groo v. Mont. Eleventh Jud. Dist. Ct.*, 537 P.3d 111, 119 (Mont. 2023).

In assessing whether a tort claim accrued in Montana under Rule 4(b)(1)(B), courts focus "on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Tackett*, 334 P.3d at 928. "A tort does not accrue in Montana when all acts giving

rise to the claims occur in another state." *Milky Whey*, 342 P.3d at 18. "[T]he mere fact that the plaintiff was detrimentally affected within Montana by the defendant's actions outside Montana is not sufficient to establish accrual of a tort action within [Montana]." *Tackett*, 334 P.3d at 929 (citing *Cimmaron*, 67 P.3d at 261–62).

Regarding fraud committed by out-of-state defendants, the Montana Supreme Court has held that "the transmission into Montana of material statements that the defendant allegedly knows are false or fraudulent is insufficient by itself to establish accrual of a fraud or deceit action in Montana." *Id.* In *Tackett*, the court considered whether non-resident defendants were subject to specific jurisdiction in Montana where they had allegedly procured a wire transfer from a Montana resident using false pretenses. The Montana resident argued that his tort claims accrued in Montana because his injury—the transfer of funds—occurred in Montana. The court disagreed. Surveying previous cases where the crux of the plaintiffs' arguments for accrual of a tort within Montana was the transmission of funds to an out-of-state defendant, the court explained that simply because a defendant "took actions which were calculated to have an effect in Montana and caused an injury to a Montana resident in Montana does not establish accrual of an action in Montana." *Id.* (citing *Bi-Lo Foods*, 955 P.2d at 157–59).

/ / /

16

YRE essentially makes the same argument for accrual of a tort within Montana that the court rejected in *Tackett*: all of the tortious conduct occurred outside Montana, but the alleged injury occurred to a Montana resident. Like the defendants in *Tackett*, NCC allegedly made material misrepresentations from out-of-state to a Montana resident that resulted in funds being dispatched from Montana out of the state. For the same reasons that the plaintiff in *Tackett* could not establish accrual of a tort in Montana through the transmission of funds to out-of-state parties due to fraudulent misrepresentations, this Court finds that the torts YRE alleges did not accrue within Montana.

Because NCC did not transact business within Montana or commit an act that caused a tort to accrue within Montana, there is no basis for asserting jurisdiction over it pursuant to Montana's long-arm statute. The Court does not, therefore, need to proceed to the next step of determining whether the exercise of such jurisdiction would comport with due process under the Ninth Circuit's three-part test.

### B.    Leave to Amend

A court may grant a motion to dismiss with or without leave to amend. The Ninth Circuit has made clear "[i]t is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*,

17

800 F.3d 1032, 1041 (9th Cir. 2015).  YRE may be able to allege additional facts to support a finding of personal jurisdiction.  Therefore, YRE will be given thirty (30) days within which to file an amended complaint that cures the deficiencies outlined above.  If no amended complaint is filed within that time, the Clerk will be directed to close this case.

## III.    CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss for lack of personal jurisdiction (Doc. 16) is **GRANTED**, without prejudice and with leave to amend.

**IT IS ORDERED**.

DATED this 7th day of November, 2025.

_____

TIMOTHY J. CAVAN
United States Magistrate Judge